The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| C-N-D Industries, Inc., | ) | CASE NO. 10-62363 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

Schottenstein, Zox & Dunn Co., L.P.A. ("SZD") filed an Amended Second Interim Application for Allowance of Compensation and Reimbursement of Expenses ("application") on May 19, 2011. Through the application, they seek fees of $39,704.00 and expenses of $213.92 for a four month period, October 1, 2010 to January 31, 2011. No objections were filed.[1] The court held a hearing on May 26, 2011. Robert M. Stefancin appeared on behalf of SZD. Anthony J. DeGirolamo appeared on behalf of Debtor.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409.

---

[1] The United States Trustee filed a limited objection to the original application and the amended application was in response. The amended application resolved the limited objection.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtor operates a steel fabrication and machine shop in Canton, Ohio. It supplies parts for melt shops and rolling mills. At this pinnacle in 2008, Debtor had sales of $7.5 million and employed 70 people. Debtor is self-identified as a small business debtor under 11 U.S.C. § 101(51D).

At the time of its filing, May 29, 2010, Debtor employed approximately 38 people and its business had declined precipitously. Debtor undertook a large project that did not go as anticipated, resulting in the accumulation of more than $1 million in trade debt. In addition, Debtor owed approximately $2 million to its prepetition secured lenders.

Debtor's schedules indicate it owns no real property. Debtor values its personal property at $2,585,33.20 on Schedule B. The total unsecured debt listed on Schedule F is $1,852,604.46.

On June 10, 2010, the United States Trustee appointed a creditors' committee ("committee"). Robert Stefancin of SZD is lead counsel for the committee. Other professionals employed in the case include: Anthony J. DeGirolamo, general counsel for Debtor; Gerald L. Baker, special counsel for Debtor; and 415 Group, Inc., Debtor's accountant and financial advisor. Per the applications to employ the professionals, the hourly rates are as follows:

| | |
|---|---|
| Anthony J. DeGirolamo | $270 per hour |
| Richard Craig (415 Group principal) | $215 per hour |
| Gerald Baker | $250 per hour |
| Robert Stefancin | $395 per hour[2] |

The court approved procedures for awarding interim compensation and the reimbursement of expense by order dated June 17, 2010. Professionals submit a monthly statement to Debtor by the 15th of each month for the previous month's services. If Debtor does not object, and has funds available, Debtor pays eighty percent (80%) of the fees and one hundred percent (100%) of the expenses. Every four months, the professionals must file a fee application with the court. Upon approval of the fee application, the professional receives the twenty percent (20%) hold back of the fees.

Debtor's last operating report, for March 2011, showed the following:

| | |
|---|---|
| Total income | $294,876.14 |
| Expenses | $352,485.23 |

---

[2] Since filing the application for employment, Mr. Stefancin's hourly rate increased to $410 per hour.

2

| | |
|---|---|
| Net Loss | ($57,609.09) |
| Postpetition unpaid bills | $405,280.97 |
| Receivables | $275,819.44 |
| Total bankruptcy-related professional fees paid since filing | $101,301.82 |
| Available cash | $ 12,229.50 |
| Projected income for April 2011 | $274,556.00 |
| Projected expenses for April 2011 | $417,840.00 |
| Projected loss for April 2011 | ($143,284.00) |

At the hearing held on May 26, 2011, it was stated that Debtor is selling all machine shop assets and will attempt to reorganize the remaining portion of its business. Debtor filed a chapter 11 plan and disclosure statement on June 1, 2011.

## LAW AND ANALYSIS

The court's disquiet is the increasing amount of professional fees in a small, local business case. At the hearing on the fee application, the parties acknowledged concern over Debtor's financials. The court would be remiss were it not to consider the impact of professional fees in this case.

> [T]he integrity of the bankruptcy system . . . is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications sua sponte. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law . . . . Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

In re Busy Beaver Bldg. Ctrs, Inc., 19 F.3d 833, 841 (3rd Cir. 1994) (citing In re Evans, 153 B.R. 960, 968 (Bankr. E.D. Penn. 1993) (other citation omitted)).

Chapter 11 professionals are entitled to "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). To determine what is reasonable, the bankruptcy code states that a court

> shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (A)   the time spent on such services;

3

(B) the rates charged for such services;

(C) whether such services were necessary to the administration of, or benefit at the time at which the service was rendered toward completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field, and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The Sixth Circuit further expounded on how to determine the reasonable compensation by adoption of a lodestar calculation. *See* In re Boddy, 950 F.2d 334 (6th Cir. 1991). The formula requires the court to "multiply the attorney's reasonable hourly rate by the number of hours reasonably expended." Id. at 337. The resulting lodestar amount is subject to upward or downward adjustment based on twelve factors:

(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Geier v. Sundquist, 372 F.3d 784, 793 (6th Cir. 2004) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also* Hensley v. Eckerhart, 461 U.S.

424 (1983).

To calculate the lodestar, the court must determine the reasonable hourly rate in a small, local business bankruptcy case. The local professionals all charge $270 or less per hour while Mr. Stefancin, a member of a Cleveland firm, is now charging $410 per hour. While $410 is not per se unreasonable, it does exceed the prevailing market rate for Canton, Ohio as evidenced by the fees charged by other professionals in this case and comparable cases. Typically, professionals are entitled to compensation reflecting community rates. *See, e.g.*, In re New Boston Coke Corp., 299 B.R. 432 (Bankr. E.D. Mich. 2003) (citations omitted); In re Auto Parts Club, Inc., 224 B.R. 445 (Bankr. S.D. Cal. 1998). The facts of the case will dictate the appropriate view of community for the purposes of determining the prevailing rate. *See, e.g.*, Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253 (3rd Cir. 1995) (awarding New York rates to the accounting firm because the bankruptcy was large and national in scope). The community rate must be flexible to account for cases which are national in scope.

In this case, the community is very localized. All of Debtor's operations are in Stark County, Ohio. This is a small local case with limited assets, liabilities, and limited complexity. It does not involve unique non-bankruptcy complexities such as securities technicalities or military contracting law. Consequently, the community rate is focused in this division of the district. Based on this view, Mr. Stefancin's hourly rate is not reasonable because it exceeds the prevailing rate for Canton, Ohio.

Not only does the community impact the rate of compensation, but the size of the debtor and the estate is also material. The size of the estate gives context to what the reasonable rate is, as well as the reasonableness of the time expended. The size of the estate was long considered a factor in calculating reasonable value of services in this circuit. Cle-Ware Indus., Inc. v. Sokolosky, 493 F.2d 863, 868 (6th Cir. 1974). Generally, it serves as the measuring stick by which the benefit to the estate is ascertained. The relevancy of the estate's size has also been identified by other courts.

When confronted with a case with $5.1 million in allowed claims, $3 million in assets, and professional fees and expenses nearing forty percent (40%) of the estate, the Bankruptcy Court for the District of Rhode Island reitereated:

> [t]he basis for considering the size of the estate in determining the reasonable professional fees lies in the very structure and premise of bankruptcy. It is fundamental that the bankruptcy process is for the benefit of the debtor and the creditors, not the professionals. If the fees are not reasonably proportionate to the size of the estate, the benefit shifts, as a practical matter, from the parties to the professionals.

In re Narragansett Clothing Co., 160 B.R. 477 (Bankr. D. R.I. 1993) (citing In re Gilead Baptist Church of Taylor, 135 B.R. 38, 41 (Bankr. E.D. Mich. 1991), *rev'd on other grounds*,

5

806 F.Supp. 644 (E.D. Mich. 1992)); *see also* Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc., 924 F.2d 955, 959 (9th Cir. 1991) (admonishing counsel for the committee to consider whether "the burden of the probable cost of legal services [is] disproportionately large in relation to the size of the estate and maximum probable recovery?"); In re General Oil Distrib., Inc., 51 B.R. 794 (Bankr. E.D.N.Y. 1985) (identifying "the size of the estate and the burden it can safely bear as of the considerations of the lodestar); In re Schiff, 2010 WL 3219535 (S.D.N.Y. 2010) (unreported) (advising professionals to exercise "reasonable billing judgment" which includes consideration of the cost of legal services compared to the size of the estate).

The utility of factoring the size of the estate into the equation is apparent. A high hourly rate will erode the benefit of the services to the estate when the return is negligible. Obviously, care must be taken to recognize that there will also be situations when the services required in a case simply cannot proportionally relate to the size of the estate. At this point, the court must be sensitive to not over-emphasize the size of the estate as one factor in establishing what is reasonable.

Awareness of the estate's size may ultimately benefit professionals. No professional wants to be the subject of a disgorgement order in an administratively insolvent case, especially by a chapter 7 trustee following conversion.

Turning to the present case, the court is wholly convinced that Debtor cannot support the continued pay out of professional fees at the current rate. Comparatively, it appears that the professional fees do not match performance in the case. Although SZD's application is before the court, this court's concerns apply to all professionals in this case.

The court will allow the fees paid by Debtor to date. Payment of the twenty percent hold back is held in abeyance until final fee applications are filed.

This does not mean that a rate of eighty percent of SZD's current rates is accepted going forward as even that amount far exceeds the rate of the others involved. The order approving procedures for interim compensation will be revoked. Debtor is not authorized to pay additional fees without further court order.

It's time to move this case down the road. With this decision, the professionals will be in the same position as other creditors: waiting for their payment.

The court will issue a corresponding order.

#   #   #

6

**Service List**:

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Gerald L Baker
3711 Whipple Ave NW
Canton, OH 44718-2933

Dean Wyman
Scott R. Belhorn
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, OH 44114-1240

Robert M Stefancin
Schottenstein, Zox & Dunn Co., LPA
Fifth Third Center
600 Superior Avenue, East
Suite 1701
Cleveland, OH 44114

FourFifteen Group
4100 Holiday St NW
Suite 100
Canton, OH 44718